Bryan K. Weir (#310964)
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Blvd., Suite 700
Arlington, VA 22201
(703) 243-9423
bryan@consovoymccarthy.com

Michael H. Park
CONSOVOY MCCARTHY PARK PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
(212) 247-8006
park@consovoymccarthy.com

Counsel for Movants

FILED

OCT – 3 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

In re:

SUBPOENAS TO PRODUCE DOCUMENTS,
INFORMATION, OR OBJECTS TO MUDDY
WATERS CAPITAL LLC, MLAF LP, AND
SS&C TECHNOLOGIES, INC.

Underlying Case: *In re Banc of California
Securities Litigation*, 17-cv-00118 (C.D. Cal.)

CV 18 80 175 MISC TSH

Case Number: Misc. No. _____

**NOTICE OF MOTION AND MOTION
OF NONPARTIES MUDDY WATERS
CAPITAL LLC, MLAF LP, AND SS&C
TECHNOLOGIES INC. TO QUASH
SUBPOENAS**

Date: TBD
Time: TBD
Judge: TBD
Dept.: TBD

1

Motion to Quash Subpoenas by Nonparties

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................... i

TABLE OF AUTHORITIES ................................................................................... ii

NOTICE OF MOTION AND MOTION .................................................................. 4

STATEMENT OF THE ISSUES ............................................................................. 4

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 5

I.    BACKGROUND ........................................................................................... 5

II.   JURISDICTIONAL STATEMENT .............................................................. 7

III.  LEGAL STANDARD .................................................................................... 7

IV.   ARGUMENT ................................................................................................ 8

  A.  The Subpoenas Should Be Quashed Because They Impose an Undue Burden ................... 8

    1.  The Subpoenas Seek Irrelevant Information ................................................. 9

    2.  The Subpoenas' Requests Are Overbroad ................................................. 11

  B.  The Subpoenas Should Be Quashed Because They Seek Protected Information .............. 14

    1.  The Subpoenas Seek Confidential Research and Communications ............................. 15

    2.  The Subpoenas Seek Confidential Information About the Clients of Nonparties ......... 16

    3.  The Subpoenas Seek Information About Anonymous Speakers .................................. 18

CONCLUSION ..................................................................................................... 20

CERTIFICATE OF SERVICE .............................................................................. 21

Motion to Quash Subpoenas by Nonparties

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*AngioScore, Inc. v. TriReme Med., Inc.,*
  No. 12-cv-03393, 2014 WL 6706873 (N.D. Cal. Nov. 25, 2014) .............................. 14

4

5

*Arista Records, LLC v. Doe 3,*
  604 F.3d 110 (2d Cir. 2010)................................................................................ 18

6

*Art of Living Found. v. Does 1-10,*
  No. 10-cv-5022, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ............................... 18

7

*Audio MPEG, Inc. v. HP Inc.,*
  No. 16-mc-80271, 2017 WL 950847 (N.D. Cal. Mar. 10, 2017) ............................ 10

8

9

*Aurelius v. BofI Fed'l Bank,*
  No. 16-mc-71, 2016 WL 8925145 (C.D. Cal. Sept. 20, 2016) ...................... 10, 18, 19

10

*Chevron Corp. v. Donziger,*
  No. 12-mc-80237, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) .............................. 8

11

12

*Compaq Computer Corp. v. Packard Bell Elecs., Inc.,*
  163 F.R.D. 329 (N.D. Cal. 1995).......................................................................... 15

13

*Dart Indus. Co. v. Westwood Chem. Co.,*
  649 F.2d 646 (9th Cir. 1980) ................................................................................. 8

14

*Highfields Capital Mgmt., L.P. v. Doe,*
  385 F. Supp. 2d 969 (N.D. Cal. 2005) ................................................................... 19

15

16

*In re Anonymous Online Speakers,*
  661 F.3d 1168 (9th Cir. 2011) ............................................................................. 18

17

*In re Ashworth, Inc. Secs. Litig.,*
  No. 99-cv-121, 2002 WL 33009225 (S.D. Cal. May 10, 2002) ............................... 13

18

19

*In re Banc of California Secs. Litig.,*
  No. 17-cv-00118, 2017 WL 3972456 (C.D. Cal. Sept. 6, 2017) ....................... 6, 9, 11

20

*In re Biovail Corp. Secs. Litig.,*
  247 F.R.D. 72 (S.D.N.Y. 2007) ........................................................................ 9, 13

21

22

*Intermarine LLC v. Spliethoff Bevrachtingskantoor BV,*
  123 F. Supp. 3d 1215 (N.D. Cal. 2015) .................................................................. 7

23

*Laxalt v. McClatchy,*
  116 F.R.D. 455 (D. Nev. 1986).............................................................................. 8

24

*Lemberg Law LLC v. Hussin,*
  No. 16-cv-80066, 2016 WL 3231300 (N.D. Cal. June 13, 2016)......................... 7, 19

25

26

*Mattel, Inc. v. Walking Mountain Prods.,*
  353 F.3d 792 (9th Cir. 2003) ............................................................................ 8, 14

27

*McIntyre v. Ohio Elections Comm'n,*
  514 U.S. 334 (1995)............................................................................................ 18

28

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005) ............................................................................ 8

*Music Grp. Macao Commercial Offshore Ltd. v. Does*,
   82 F. Supp. 3d 979 (N.D. Cal. 2015) ...................................................................... 19

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007) ........................................................................... 12

*Optimize Tech. Sol'ns, LLC v. Staples, Inc.*,
   No. 14-cv-80095, 2014 WL 1477651 (N.D. Cal. Apr. 14, 2014) ..................... 9, 17

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995) ................................................................................. 19

*Rivera v. NIBCO, Inc.*,
   364 F.3d 1057 (9th Cir. 2004) .......................................................................... 11, 19

*Sci. Games Corp. v. AGS LLC*,
   No. 17-cv-343, 2018 WL 2292811 (D. Nev. May 18, 2018) ................................. 9

*United States v. C.B.S., Inc.*,
   666 F.2d 364 (9th Cir. 1982) ................................................................................... 7

**OTHER AUTHORITIES**

17 C.F.R. § 248.30 ...................................................................................................... 17

Fed. R. Civ. P. 26 ..................................................................................................... 8, 12

Fed. R. Civ. P. 45 ................................................................................................ *passim*

FINRA Rule 8210 ...................................................................................................... 18

Motion to Quash Subpoenas by Nonparties

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that as soon as counsel may be heard in the United States District Court for the Northern District of California, Movants Muddy Waters Capital LLC, MLAF LP, and SS&C Technologies, Inc. will, and hereby do, move the Court for an order quashing three subpoenas that Defendant Steven Sugarman issued in the underlying case *In re Banc of California Securities Litigation*, No. 17-cv-00118 (C.D. Cal.). This motion is made pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the attached exhibits, and any other matter which may be submitted at the hearing.

## STATEMENT OF THE ISSUES

Should the Court quash the subpoenas served on Muddy Waters Capital LLC, MLAF LP, and SS&C Technologies, Inc. under Federal Rule of Civil Procedure 45 because the subpoenas subject Movants to undue burden by seeking irrelevant, overbroad, and confidential information.

## MEMORANDUM OF POINTS AND AUTHORITIES

This motion seeks to quash subpoenas served on three nonparties to a securities class action in which they have no involvement. *See* Exhibits A-C. The nonparties were simply investors in the securities at issue in the underlying case. The subpoenas are comprised of extraordinarily broad, burdensome, and invasive requests seeking a wide array of information unrelated to the underlying claims or defenses. They are thus improper efforts to conduct fishing expeditions into the confidential business activities of non-parties, and any potential relevance to the underlying litigation is tenuous at best and would be far outweighed by the substantial burdens they would impose on companies with no involvement in the conduct at issue. Movants respectfully request that this Court quash the subpoenas in their entirety for the reasons explained below or, in the alternative, transfer this motion to the issuing court.

## I.    BACKGROUND

In the underlying case, Lead Plaintiff Iron Workers Local No. 25 Pension Fund ("Plaintiff") filed suit against Defendants Banc of California, Inc. ("Banc") and Steven Sugarman ("Sugarman"), Banc's former CEO and Chairman of the Board (together, "Defendants"), in the U.S. District Court for the Central District of California. *See In re Banc of California Secs. Litig.*, No. 17-cv-00118 (C.D. Cal. May 31, 2017) (the "Class Action"). The Class Action Complaint alleges, among other things, that Defendants violated federal securities laws by disseminating false and misleading statements to the investing public. *See generally* Complaint (Exhibit D). In particular, the Complaint alleges that then-CEO Sugarman's biography in the Banc's proxy statements misleadingly omitted information about his business connections with Jason Galanis, who had pled guilty to securities fraud. Banc shares fell significantly when an anonymous short seller identified as "Aurelius" published a blog post on October 18, 2016 citing numerous publicly available sources exposing financial ties between Sugarman, other Banc directors, and Galanis.

The court denied Defendants' motions to dismiss last year, *see In re Banc of California Secs. Litig.*, No. 17-cv-00118, 2017 WL 3972456 (C.D. Cal. Sept. 6, 2017), and the case is in discovery.

Nonparty Muddy Waters Capital LLC ("MWC") is an investment adviser based in San Francisco, California. Nonparty MLAF LP ("MLAF") is a San Francisco-based hedge fund launched and managed by MWC, which invests in public equity markets. Nonparty SS&C Technologies, Inc. ("SS&C") is a provider of investment and financial software-enabled services; it provides fund administration services for MWC and MLAF, including accounting, treasury, and investor services, among others. MWC, MLAF, and SS&C (together, "Movants") are not parties to the Class Action and had no involvement in that litigation until Defendant Sugarman served them with substantially identical Subpoenas to Produce Documents, Information, or Objects on September 11, 2018 (collectively, the "Subpoenas"). *See* Exs. A-C. Movants are not mentioned in the Complaint and had no involvement in the allegations that give rise to the securities claims at issue in the Class Action.

The Subpoenas seek the following information from Movants from the period of October 1, 2015 to April 30, 2017:

1. All of Movants' communications with the Banc.

2. All documents reflecting Movants' transactions in securities of the Banc.

3. All documents relating to Movants' decision to enter into any transactions in securities of the Banc.

4. All documents or communications relating to a blog post concerning the Banc, including communications with its anonymous author ("Aurelius") or the website Seeking Alpha.

5. All documents relating to communications between Movants and any other third parties regarding Defendants or the blog post.

6. All communications relating to Galanis, a non-party with whom Defendants are alleged to have been in contact with.

7. All communications between Movants and third parties, COR Clearing and COR Securities, relating to Defendants.

8. All communications between Movants and Plaintiff's counsel in the Class Action.

9. All correspondence with various individuals alleged to have had involvement with Defendants.

10. All of Movants' investors who held securities of the Banc on October 18, 2016.

## II. JURISDICTIONAL STATEMENT

The Subpoenas were issued by the U.S. District Court for the Central District of California and call for the production of documents to the office of issuing counsel in San Francisco, California. Pursuant to Federal Rule of Civil Procedure 45(d)(3), this Court has jurisdiction over a motion to quash the Subpoenas. Accordingly, this Court has jurisdiction to decide this motion, but it may instead transfer this motion to the issuing court—*i.e.*, the U.S. District Court for the Central District of California. Fed. R. Civ. P. 45(f). Movants consent to transfer.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3) governs motions to quash a subpoena. It states that "the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; ... (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Moreover, the court "may ... quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B).

"The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Lemberg Law LLC v. Hussin*, No. 16-cv-80066, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) (citation omitted); *see United States v. C.B.S., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982). Thus, although the scope of discovery permitted through a Rule 45 subpoena is "the same as" that permitted under Rule 26(b), *see, e.g., Intermarine LLC v. Spliethoff Bevrachtingskantoor BV*, 123 F. Supp. 3d 1215, 1217 (N.D. Cal. 2015), the court must limit

7

discovery if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"On a motion to quash a subpoena, the moving party has the burden of persuasion ..., but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Chevron Corp. v. Donziger*, No. 12-mc-80237, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (citation omitted). The "relevance" standard is stricter as applied to nonparties. *See Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980); *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The standards for nonparty discovery ... require a stronger showing of relevance than for simple party discovery.").

## IV.    ARGUMENT

### A.    The Subpoenas Should Be Quashed Because They Impose an Undue Burden

The court must quash a subpoena that subjects a nonparty to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). A subpoena, in turn, is unduly burdensome if it seeks to compel production of documents regarding topics unrelated to or beyond the scope of litigation. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003). In addition, "an evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party" and requires the court's consideration of "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quotation marks and citation omitted). Here, the Subpoenas seek information that is not relevant to the claims or defenses in the underlying litigation and do so in a way that is overbroad and burdensome.

### 1.     The Subpoenas Seek Irrelevant Information

First, this Court should quash the Subpoenas because they target information that is irrelevant to Defendants' defenses. "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Optimize Tech. Sol'ns, LLC v. Staples, Inc.*, No. 14-cv-80095, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014) (quotation marks and citation omitted). Thus, once the subpoenaed party meets its initial burden, "the burden shifts to the requesting party to show a 'substantial need,'" which requires a showing that "the requested discovery is relevant and essential to a judicial determination of [the party's] case." *Sci. Games Corp. v. AGS LLC*, No. 17-cv-343, 2018 WL 2292811, at *3 (D. Nev. May 18, 2018) (citation omitted).

Here, the Subpoenas call for various categories of communications between Movants and other nonparties, information concerning Movants' investment decisions, and documents relating to the blog post at issue in the Class Action. *See supra* at 3-4. It is difficult to understand how any of these materials could be relevant to Defendant Sugarman's claims or defenses.

The Class Action concerns alleged misrepresentations or omissions by Defendants—not how certain nonparty investors in Banc securities made their investment decisions. Even if it might be relevant whether statements in the blog post were in fact true, because they were based on publicly available materials (a list of which was disclosed), any internal deliberations of investors—which are necessarily nonpublic—could have no bearing on the truth or reliability of the blog post. *See In re Banc of California Secs. Litig.*, 2017 WL 3972456, at *7 ("And a blog author, even an anonymous one, who relies on publicly filed documents doesn't raise the same concerns about unreliability as a confidential informant. Particularly when, as here, the author later released a list of all the documents that were the sources of the blog post."); *In re Biovail Corp. Secs. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007) ("[I]f those statements *were* false, it can prove

their falsity from *its* own records. Thus Biovail does not need discovery from these non-parties to prove whether or not the reports of David Maris, for example, are false. Either they are or they aren't. Given that the discovery as sought could cost millions of dollars. . . , the burden of production far outweighs any probative value.").

Even if Sugarman's theory is that nonparty short sellers drove Banc's stock price down based on false information or market knowledge prior to the blog post, that too should be proven based on the truth of the statements in the blog post itself—falsity and materiality would not depend on nonpublic information, such as the nonparties' private communications, confidential analysis, or anonymous investors. So the Subpoenas do not seek information that is relevant to the truth or falsity of the blog post. *Cf. Aurelius v. BofI Fed'l Bank*, No. 16-mc-71, 2016 WL 8925145, at *3 (C.D. Cal. Sept. 20, 2016) ("Significantly, these postings describe in detail the facts upon which the opinions are based."). In *Aurelius*, the defendant issuing the subpoena suspected that nonparties were involved in a "short and distort" stock manipulation scheme and issued a subpoena to unmask the identity of Aurelius. The court granted Aurelius's motion to quash the subpoena, holding that "innuendo" and allegations of coordination based on the "timing" of certain events and statements, without more, failed to demonstrate a need for the evidence sought. *Id*. So too here.

Nor do the Subpoenas seek information that is necessary to prove or disprove loss causation. That issue depends on whether the blog post led to a decline in the stock price. Movants' subjective views regarding Banc securities, and the nonpublic communications and research on which those views were based, do not bear on loss causation; the change in the stock price is all that is needed. *Cf., e.g., Audio MPEG, Inc. v. HP Inc.*, No. 16-mc-80271, 2017 WL 950847, at *3-*4 (N.D. Cal. Mar. 10, 2017) ("[T]he motivations of a non-party are irrelevant to whether the

parties are liable for antitrust violations… A non-party's motivations and understanding of its relationship with a party accused of monopolization has no bearing on any of these elements.").

The issuing court noted in denying Defendants' motions to dismiss that the Complaint is based not only "on the opinion of the blog post's author that Banc was 'un-investible'" but that it "relies much more on the factual conclusions that led to the author's overall opinion." *In re Banc of California Secs. Litig.*, 2017 WL 3972456, at *10. The court also noted that it was "reluctant to call the SEEKINGALPHA blog post no more than an opinion piece" due to "the author's later revelation of his numerous sources." *Id.* It is those publicly available sources—and the truth or falsity of the statements in the blog post—that may bear on the issues in the Class Action. The fact that the alleged fraud "was revealed by a short-seller" is not itself a factor that would bear in any way on loss causation, particularly in an efficient market. To the extent that Sugarman suspects that Banc securities were targeted by nonparty research analysts and investors, activist short-selling is entirely legal and actually beneficial to markets. *See infra* at 17. And to the extent that Sugarman complains of alleged market manipulation, such accusations are unfounded and in any event, they are the province of regulators (who have raised no such concerns). Sugarman's hope that this nonparty discovery may somehow support his theory or at least generate additional leads for further discovery is not sufficient to establish relevance. Thus, the Subpoenas should be quashed because they seek information that is not relevant to the Class Action.

## 2. The Subpoenas' Requests Are Overbroad

The Subpoenas also impose an undue burden on Movants because they are wildly overbroad. A party may not use the subpoena process to engage in a fishing expedition. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'") (citation omitted).

11

To start, Request No. 1 seeks "All COMMUNCIATIONS with BANC." Ex. A, at 13. Such discovery should be sought in the first instance from the parties themselves—*i.e.*, Defendant Banc—rather than by burdening nonparties. "In determining whether the subpoena should be enforced, the Court is guided by not only Federal Rule of Civil Procedure 45(c)(3)(A)(iv) which protects subpoenaed parties from 'undue burden' but also Rule 26, which provides, *inter alia*, that a court may limit discovery if 'the discovery sought ... is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quoting Fed. R. Civ. P. 26). In *Nidec*, the discovery request was quashed because "the vast majority of the discovery sought from [the nonparty] is discovery obtainable from a source more direct, convenient, and less burdensome—namely, from Defendants." *Id.* The fact that Sugarman did not obtain this information from his co-Defendant and instead demands it from multiple nonparties suggests that he made little or no effort to frame the requests narrowly.

More importantly, the overbreadth of the Subpoenas speaks for itself. For example, Request No. 5, seeks "All DOCUMENTS that refer, reflect or relate to COMMUNICATIONS between YOU and any third party regarding BANC, SUGARMAN, GALANIS, ALLEGED GALANIS ENTITY, the BLOG, or AURELIUS, including without limitation COMMUNCIATIONS between YOU and any of the following people or entities ...." Ex. A, at 15. It goes on to list 25 entities or individuals involved in trading Banc securities, five entities or individuals relating to a Bloomberg news article, and 20 entities or individuals involved in diligence or communications with Banc. *Id.* at 15-16. This request alone would require Movants to run approximately 50 search terms to capture the names specified in the Subpoenas.

Request No. 6 similarly seeks "All COMMUNICATIONS with and DOCUMENTS that refer, reflect or relate to GALANIS or any ALLEGED GALANIS ENTITY," the definition of

which includes some 30 names. *See* Ex. A, at 7-8, 16. Request No. 8 likewise identifies over 15 law firms, and Request No. 9 lists an additional 12 names of entities or individuals whose communications with Movants would be responsive. *Id.* at 16. Compliance with the Subpoenas would require Movants to run over a hundred search terms, not to mention the burden and expense of attorney review. The expansive wording of the Subpoenas also reflects no effort by Defendant Sugarman to limit his requests. *See* Ex. A (using "all," "any," and "including without limitation" in most of the requests).

Such overbroad discovery requests with tenuous relevance at best plainly impose an undue burden on nonparties. *Cf., e.g., In re Biovail*, 247 F.R.D. at 74 ("[T]he virtually limitless financial and other information Biovail seeks is unnecessary and irrelevant, at least in *this* case, and the burden these demands place on the subpoenaed non-parties and diversion of their staff to provide it far outweighs any probative value of the information."); *In re Ashworth, Inc. Secs. Litig.*, No. 99-cv-121, 2002 WL 33009225, at *6 (S.D. Cal. May 10, 2002) ("This Court's review of the subpoenas issued to the financial analysts and investment companies reveals that the requests are overwhelmingly broad in category and content. As they are phrased, the requests appear, in this Court's view, to seek all documents in the third party financial analysts' possession that refer to or mention Ashworth in any shape or form.").

Moreover, the MWC subpoena purports to require production on behalf of its "employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of these entities or individuals." Ex. A, at 11. But issuing counsel went ahead and issued nearly identical, and thus redundant subpoenas on MLAF and SS&C.[1] Moreover, no effort was made to

_____

[1] As a fund administrator of MWC and MLAF, any responsive materials of SS&C would fall into one of two categories: (i) property of MWC and MLAF, and therefore duplicative of the subpoenas served on them, or (ii) materials relating to the administration and financial accounting

1    exclude privileged information from attorneys, which is another basis on which the Subpoenas

2    should be quashed. *See* Fed. R. Civ. P. 45(d)(3)(a)(iii).

3          Finally, in addition to being defective for all of these reasons, the Subpoenas fail to allow

4    a reasonable time for compliance. *See* Fed. R. Civ. P. 45(d)(3)(A)(i). The Subpoenas seek the

5    production of broad categories of documents covering a substantial time period within three weeks

6    (extended from two weeks by issuing counsel). Three weeks is insufficient time for Movants to

7

8    search for, review, and produce the requested information with limited staff and resources.

9          In sum, the Subpoenas must be quashed because they would impose an undue burden on

10   Movants, seeking broad discovery with minimal relevance to the Class Action that would impose

11   significant burdens on nonparties. *See, e.g., AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-

12   03393, 2014 WL 6706873, at *3 (N.D. Cal. Nov. 25, 2014) ("[T]he Court has weighed the burden

13   of the subpoenas on non-party Spectranetics against the minimal value of this information to

14   Defendants and concludes that it poses an undue burden on the non-party.").

15

16         **B.      The Subpoenas Should Be Quashed Because They Seek Protected Information**

17         This Court should also quash the Subpoenas because they seek information that is protected

18   from disclosure. "To protect a person subject to or affected by a subpoena, the court for the district

19   where compliance is required may, on motion, quash or modify the subpoena if it requires …

20   disclosing a trade secret or other confidential research, development, or commercial information."

21   Fed. R. Civ. P. 45(d)(3)(B); *see also Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814

22   (9th Cir. 2003).

23

24

25

26

27
_____

28   services SS&C provides for those funds, which are not even tangentially related to the allegations
     asserted in the Class Action. For these reasons alone, the SS&C subpoena should be quashed.

Motion to Quash Subpoenas by Nonparties

### 1.     The Subpoenas Seek Confidential Research and Communications

This Court should quash the Subpoenas because they seek a broad array of confidential information about the inner workings of Movants' businesses, including private communications, proprietary work product, and sensitive materials concerning investment decisions. A nonparty resisting such discovery must show that the discovery sought is protected and that it has sought to maintain its confidentiality. *See, e.g.*, *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995) ("The Court is persuaded that Acer's procedures for recycling computer parts do constitute important proprietary information. Further, Acer has made a strong showing that it has historically sought to maintain the confidentiality of this information.").

The Subpoenas at issue here seek precisely this type of information. Request No. 2 seeks "All DOCUMENTS that reflect YOUR TRANSACTIONS in BANC SECURITIES," including numerous transaction details, including profits earned. Ex. A, at 14. And Request No. 3 seeks "All DOCUMENTS that refer, reflect or relate to the basis for YOUR decision to engage in any TRANSACTIONS in BANC SECURITIES." *Id.* These requests explicitly encompass communications, analysis, research, and other proprietary and sensitive information about Movants' businesses.

Movants MWC and MLAF are an investment adviser and a hedge fund, respectively, that focus on research-based short activist investing. The bases on which they make trading decisions are proprietary and highly confidential. The inner workings of investment firms, including their research, analysis, communications, strategy, and transactions, should not be susceptible to discovery in cases in which they have no direct involvement. And just as MWC's and MLAF's activities are confidential and proprietary, any administration services provided by SS&C in its capacity as an agent are likewise confidential and outside the bounds of discovery.

15

### 2. The Subpoenas Seek Confidential Information About the Clients of Nonparties

This Court also should quash the Subpoenas because they seek confidential information not only about Movants themselves, but also about their clients. The Subpoenas seek the identities and contact information of direct and indirect investors in MWC, the investment advisor, as well as MLAF, which also invests money on behalf of others. This is an apparent effort to obtain leads for further discovery. Specifically, Request No. 10 seeks "All INVESTORS in YOU that held BANC SECURITIES, either directly or through a fund, as of October 18, 2016, including contact information sufficient to identify the principals, addresses, and contact information associated with the INVESTOR." Ex. A, at 16. Not only do such investors have a reasonable expectation to remain unidentified in tangential litigation, but Movants should not be required to disclose their investors' personal confidential information, particularly where the likely result is that Defendant Sugarman will use such information to subpoena those investors.

The disclosure of clients who invest passively could cause significant harm to Movants. One of the most important features of investment partnerships like MLAF and MWC's other clients is the ability of individuals and entities to invest anonymously. This is why investment managers vigorously protect client confidentiality, which is central to the fiduciary relationship between managers and investors. It is why Movants provide repeated assurances to their investors of strict confidentiality. For example, MWC states that it shall not "disclose the Investor's name, other identifying information regarding the Investor, or the Investor's address, to any third party, and shall not otherwise disclose, either orally or in writing, any relationship with the Investor using the Investor's name or other identifying information regarding the Investor, for any reason (other than as required by law, regulation or legal process), without the prior written consent of the Investor." Movants' privacy policies reiterate that they "do not disclose nonpublic personal information about our clients or former clients to third parties," except as required by law.

16

Moreover, they advise investors that "[t]o protect your personal information from unauthorized access and use, we use security measures that comply with Federal law. These measures include computer safeguards and secured files and buildings." To be sure, such provisions allow for exceptions as required by law, which includes subpoenas, but these robust assurances of confidentiality go beyond typical privacy provisions in ordinary commercial contexts. As a result, Movants' clients have a reasonable expectation that their identities will be protected and that their passive investments managed by MWC will remain confidential. Under these circumstances—and where Movants themselves are nonparties and their conduct is not at issue—courts should ensure that discovery sought from twice-removed nonparties is demonstrably "relevant and material" to the claims at issue in the underlying proceedings. *See Optimize Tech.*, 2014 WL 1477651, at *2.

Moreover, it is Movants' understanding that Defendant Sugarman obtained their identities and information about their trading activity in Banc securities from discovery produced by another nonparty, ACS Execution Services LLC ("ACS"), which provides services to Movants, in response to a separate nonparty subpoena. And Sugarman subpoenaed ACS based on information produced by the Financial Industry Regulatory Authority, Inc. ("FINRA")—another nonparty subject to yet another nonparty subpoena. Thus, it appears to be Sugarman's intention is to continue issuing nonparty subpoenas, which threatens to harm Movants by subjecting their clients to the burden of being named as unwilling participants in litigation in which they had no involvement or knowledge.

More importantly, FINRA and ACS should not have provided personally identifiable information because such disclosure is inconsistent with the importance FINRA itself attaches to the protection of personal confidential information of investors by broker-dealers and other regulated entities that are required by law to have robust policies, practices, and procedures to protect against unauthorized disclosure. *See, e.g.*, 17 C.F.R. § 248.30 (Rule 30 of REG S-

P). Because private civil litigants lack FINRA's broad regulatory authority, *see, e.g.*, FINRA Rule 8210, it would be an end-run of these privacy protections to permit further disclosure and use of investors' personally identifying information by litigants who happen to obtain such information, which FINRA possesses solely for regulatory purposes and ought not to produce as a nonparty to private civil litigation. Thus, to the extent that Sugarman seeks information from investors who should not have been disclosed in the first place, this Court should not permit such discovery.

### 3.  The Subpoenas Seek Information About Anonymous Speakers

Finally, the Subpoenas seek various categories of information relating to the communications and trading activities of anonymous speakers and investors. Investors in Banc securities have a right to remain anonymous, just as a speaker has a First Amendment right to anonymity. *See, e.g., In re Anonymous Online Speakers*, 661 F.3d 1168, 1172-73 (9th Cir. 2011); *Aurelius*, 2016 WL 8925145, at *2. "It is well established that the First Amendment protects the right to anonymous speech." *Art of Living Found. v. Does 1-10*, No. 10-cv-5022, 2011 WL 5444622, *3 (N.D. Cal. Nov. 9, 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) ("To the extent that anonymity is protected by the First Amendment, a court should quash or modify a subpoena designed to breach anonymity."). Among other reasons, investors may include whistleblowers or anonymous authors, such as Aurelius, who seek to expose corporate mismanagement or fraud. Indeed, short selling is not only a legitimate strategy, but one that provides a salutary service by identifying and exposing fraud and other malfeasance by market participants.

Request No. 4 seeks "All DOCUMENTS and COMMUNICATIONS that refer, reflect or relate to the BLOG or AURELIUS." Ex. A, at 14. To the extent that the Subpoenas seek to gather information about the blog post and Aurelius, they constitute an impermissible fishing expedition.

18

*See, e.g., Rivera*, 364 F.3d at 1072. Nonparty discovery cannot be used as a tool to obtain information about the identities of anonymous speakers, particularly when Defendants would likely not even be able to seek discovery from them directly. *See, e.g., Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) ("[A] party seeking to discover the identity of an anonymous speaker must first 'persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff.'") (quoting *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005)). Indeed, courts have quashed subpoenas attempting to identify anonymous authors of blog posts, including Aurelius himself. *See Aurelius*, 2016 WL 8925145, at *3-*6 (granting a motion to quash by Aurelius); *see also Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995) ("[W]hen a speaker outlines the factual basis for his conclusion, his statement is protected by the First Amendment.").

As a matter of public policy, it would set a sweeping and dangerous precedent if investors could be subject to discovery as nonparties in cases involving alleged misrepresentations or omissions by defendants in securities fraud cases. It would be even worse for fund administrators like SS&C, which provides confidential accounting services for thousands of funds, to be compelled to disclose confidential information about its clients. This is especially true if courts were to reward parties with discovery from nonparties identified through subpoenas to regulators like FINRA. Allowing such attenuated discovery would only embolden and encourage well-heeled parties to cast broader nets for information like trading records and investor identities from nonparties, including from regulators and financial institutions, which is the type of misuse of the subpoena power from nonparties that Rule 45(d) was designed to protect against. *See* Fed. R. Civ. P. 45, advisory's committee note to 1991 amendment; *Lemberg Law*, 2016 WL 3231300, at *5.

Motion to Quash Subpoenas by Nonparties

In addition, requiring disclosure of nonparties' investors and their trading activity in securities cases could chill investors from engaging in speech about public companies and deter them from trading in securities generally. Investors, analysts, and agents of funds rightly concerned about being dragged into private civil litigation should not have to worry about potential disclosure of their identities, communications, and work product based solely on their trading positions in public securities markets.

## CONCLUSION

For the above reasons, Movants respectfully request that this Court quash the Subpoenas. If this Court is not inclined to do so, then it should transfer to the issuing court for further consideration.

Dated: October 3, 2018                           Respectfully submitted,


                                                 By: /s/ Bryan K. Weir

                                                 Bryan K. Weir (#310964)
                                                 CONSOVOY MCCARTHY PARK PLLC
                                                 3033 Wilson Boulevard, Suite 700
                                                 Arlington, VA 22201
                                                 (703) 243-9423
                                                 bryan@consovoymccarthy.com

                                                 Michael H. Park
                                                 CONSOVOY MCCARTHY PARK PLLC
                                                 745 Fifth Avenue, Suite 500
                                                 New York, NY 10151
                                                 (212) 247-8006
                                                 park@consovoymccarthy.com

                                                 *Counsel for Movants*

Motion to Quash Subpoenas by Nonparties

# CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of October 2018, a true and correct copy of the foregoing was filed with the Clerk of the United States District Court for the Northern District of California and was served on counsel for Steven Sugarman at the following address:

> Andrew Gray
> Latham & Watkins LLP
> 650 Town Center Drive
> 20th Floor
> Costa Mesa, CA 92626
> andrew.gray@lw.com

Service was effected by sending a true copy of the foregoing document and exhibits overnight in a sealed envelope, addressed as stated above, with fees for delivery. A courtesy electronic copy of the foregoing was also sent via email to counsel at the above address.

I declare under penalty of perjury that the foregoing is true and correct.

Executed October 3, 2018.

/s/ Bryan K. Weir
Bryan K. Weir (#310964)
Counsel for Movants

Motion to Quash Subpoenas by Nonparties